

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-9-2008

# Tolib v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2635

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Tolib v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1247.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1247

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2635

SUGANDA TOLIB,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A 96-204-341)
Immigration Judge:  Honorable Charles M. Honeyman

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2008

Before: AMBRO, FISHER and JORDAN, Circuit Judges

(Opinion filed May 9, 2008 )

OPINION

PER CURIAM

Suganda Tolib petitions for review of an order of the Board of Immigration

Appeals ("BIA") affirming the Immigration Judge's ("IJ") final order of removal.   For

the reasons that follow, we will deny his petition.

Tolib is a native and citizen of Indonesia; he identifies himself as ethnic Chinese and Christian. He entered the United States in May 2000 and overstayed a B-1 visa that expired in June of 2000. In May 2003, Tolib applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), or in the alternative, voluntary departure.

After he submitted his application, Tolib withdrew his requests for asylum and relief under CAT. The IJ denied his request for withholding of removal under INA Section 241(b)(3), but granted his application for voluntary departure. The BIA affirmed the IJ's decision and dismissed the appeal, noting Tolib's acknowledgment that he withdrew his application because it was untimely filed, and that he offered no evidence to excuse the delay. The BIA further found that Tolib failed to prove it was more likely than not that his life or freedom would be threatened in Indonesia on account of his ethnicity and religion. Additionally, it found that Tolib could not establish either an individualized risk of persecution or the existence of a pattern or practice of persecution against ethnic Chinese Christians in Indonesia.

We have jurisdiction over this petition for review under 8 U.S.C. § 1252. We review the BIA's factual findings for "substantial evidence." See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). Under this standard, we find substantial evidence lacking only where the evidence "was so compelling that no reasonable fact finder could

2

fail to find the alien eligible for . . . withholding of removal." Lie v. Ashcroft, 396 F.3d 530, 534 n.3 (3d Cir. 2005).

In order to qualify for withholding of removal, an applicant must prove that it is more likely than not that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). If the applicant cannot demonstrate past persecution, he must demonstrate "that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant" on account of a protected ground. See 8 C.F.R. § 208.16(b)(2).

Tolib argues that the BIA erred in concluding that he had not proven that he would more likely than not suffer persecution if returned to Indonesia. In support of his application, Tolib testified that he and his family experienced a number of violent encounters with Indonesian Muslims ever since his youth. During the 1998 Jakarta Riots, rioters marched past his house chanting "Kill Chinese. . .! Kill Chinese. . .!" During that incident, he and his family closed down their business for the day and took shelter in their house. Tolib later heard on the news that as a result of the riots, Chinese houses were burned and looted, a Chinese man was beaten, and a Chinese woman was raped. He admitted that nothing happened to his family during this incident. Nevertheless, he asserted that he fears returning home because he believes he will live in a state of constant fear of being attacked. As further support for the credibility of that fear, Tolib

3

pointed to an incident in 2003 during which his father was attacked by perpetrators who uttered ethnic slurs and attempted to rob him outside of his house

The IJ concluded that, although his testimony was credible as to those events, he produced insufficient evidence to prove that he himself would be individually singled out for persecution on the basis of his race or religion if he were to return to Indonesia. The BIA agreed, noting that the only harm to have befallen his family – the assault against his father – was insufficient to support his claim, since it was unclear whether the incident was anything other than an isolated crime. See Lie, 396 F.3d at 536 ("Simple robbery, in isolation, while unfortunate and troubling, does not seem to meet [the] stringent standard [of threats . . . so severe that they constitute a threat to life or freedom]."). Finally, regarding Tolib's assertion that the IJ failed to consider his documentary evidence of persecution, the BIA concluded that, based on the record presented, it could not find that the Indonesian government, or forces that the government is unable or unwilling to control, have imposed a threat of harm so systematic, pervasive, or organized as to amount to a pattern or practice of persecution against Chinese Christians in Indonesia.

On petition for review in this Court, Tolib reasserts that the documentary evidence demonstrates pervasive persecution against ethnic Chinese in Indonesia and the government's unwillingness to provide protection for them. He insists that the IJ and

4

BIA opinions "paid very little attention" to that evidence.[1]  As the petitioner, Tolib bears the burden of proving that he is entitled to relief.   See id. at 535-38.

After reviewing the record, we find substantial evidence supporting the BIA's conclusion that Tolib has failed to prove that he more likely than not faces an individualized risk of persecution, or that there is a pattern or practice of persecution of Chinese Christians in Indonesia.  Tolib's testimony did not demonstrate he individually was the target of persecution.  As the BIA noted, the fact that all of his siblings and their spouses continue to remain in Indonesia, apparently without harm, further diminishes the reasonableness of his fear of persecution. See id. at 537.  And there is no evidence in the record to suggest that he would face an individualized risk of persecution more severe than his family members or other Chinese Christians in Indonesia.   To the extent that he argues that evidence of general ethnic difficulties supports a well-founded fear of persecution in his particular case, such an argument is unavailing: We have previously concluded that such generalized tensions "would not compel a reasonable fact finder to conclude that the intrusions [in this particular case] were on account of [petitioner's] ethnicity or religion." Id. at 536.

---

[1]  Tolib claims that remand is appropriate in this case because the BIA failed to provide meaningful review of his claims; however, petitioners bear the burden of proving that the BIA failed to review the record and give their petitions an individualized determination when considering the appeal. See Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir. 2001).  Tolib's argument is meritless because it rests entirely on a bare allegation that the BIA "failed to engage in a proper review process."

Next, Tolib fails to demonstrate a pattern or practice of persecution against Chinese Christians in Indonesia. The violence or harm perpetrated by civilians against the petitioner's group only constitutes persecution if the acts are "committed by the government or forces the government is either 'unable or unwilling' to control." See id. As the BIA explained, the country condition report that Tolib insists supports relief in his case actually demonstrates the Indonesian government's efforts at promoting inter-religious tolerance and cooperation, the country's constitutional enumeration of religious freedom, Christianity's status as an officially recognized religion in the country, the apparently proportional representation of Christians in senior positions in the armed forces officer corps, and the absence of reports of religious prisoners or detainees. Moreover, Tolib's claim is undermined by his own testimony that the violence during the 1998 Jakarta Riots was quelled by government troops. Tolib has not provided affirmative support for his claim. Accordingly, we agree with the BIA that Tolib has not demonstrated an entitlement to withholding of removal.

Based on the foregoing, we will deny the petition for review.